# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY NELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17-cv-05740 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Nelson is a Chicago police officer. While responding to a call alerting officers about a robbery in progress, Nelson made several calls to the dispatcher that went unanswered. As a result, Nelson claims she felt abandoned in a dangerous situation, which caused her to develop Post-Traumatic Stress Disorder ("PTSD"). And thus she has brought the present lawsuit under 42 U.S.C. § 1983 against two supervising officers, Sergeant Virginia Bucki and Sergeant Roy Boffo, as well as the City of Chicago ("City"). Nelson alleges that Bucki was required to listen to the police radio and alert the dispatcher upon hearing the lack of responses to Nelson's calls. By failing to do so, according to Nelson, Bucki violated her substantive and procedural due process rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Nelson further contends that Boffo violated her substantive due process rights by altering Nelson's report of the incident to omit any mention that some of her calls to the dispatcher were met with no response. Finally, Nelson seeks to hold the City responsible for both Bucki's and Boffo's actions. Together, Defendants now move to dismiss Nelson's Third Amended Complaint ("TAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 66.) For the reasons that follow, Defendants' motion is granted.

**BACKGROUND**

The following recitation of the facts is drawn from the allegations in the TAC, which are accepted as true for purposes of Defendants' motion to dismiss with all reasonable inferences drawn in Nelson's favor. *See Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016).

As alleged in the TAC, Nelson is a Chicago police officer. (TAC ¶ 8, Dkt. No. 64.) On December 8, 2016, Nelson was in her police squad car when she received an in-progress call from the dispatcher alerting officers that a Federal Express driver was being robbed at gunpoint. (*Id.*) As Nelson drove toward the scene, she called the dispatcher seeking further information but received no response. (*Id.*) Nelson called the dispatcher two or three more times advising "652 Emergency,"[1] as she was encountering a dangerous situation in a violence-zone area (*i.e.*, a high-crime area). (*Id.* ¶ 9.) Each time, Nelson received no response from the dispatcher. (*Id.* ¶ 10.) The lack of response caused Nelson to feel abandoned during a dangerous situation and caused her great concern for her safety. (*Id.*)

Shortly thereafter, while at the crime scene, Nelson saw a man running toward her car. (*Id.* ¶ 11.) She called the dispatcher again and advised that a black male was running toward her, further observing that he might be wearing a Federal Express uniform. (*Id.*) This time, the dispatcher responded by saying "652 may have the victim." (*Id.* ¶ 12.) Meanwhile, the Federal Express employee jumped in the front seat of Nelson's vehicle and told her that the perpetrator put a gun to his head. (*Id.*) Nelson then left the scene and began searching the area for the offender. (*Id.* ¶ 13.) She radioed the dispatcher to report her change in location. (*Id.*) Following the search, she returned to the scene with the victim. (*Id.*) There, Nelson began to feel nauseous and a tightening in her chest. (*Id.*) Nonetheless, she continued her investigation and dealt with the

---

[1] "652" refers to Nelson's call sign. (TAC ¶ 45.)

distraught victim. (*Id.*) When Nelson called the dispatcher again to inform the dispatcher of her change of location, the dispatcher responded with a cold tone. (*Id.* ¶ 14.) And when Nelson called the dispatcher again, stating "652," she received no response. (*Id.* ¶ 15.) She called dispatch yet again, and this time she received a response: Nelson stated "652 going into 006 on paper, Squad," and the dispatcher responded in a "cold tone" with "652 going in on paper!" (*Id.* ¶ 16.)

During this time, Nelson's supervisor, Sergeant Bucki, was on duty. (*Id.* ¶ 17.) One of Bucki's duties was to listen to the radio and to correct or alert the dispatcher with respect to any failure to respond to Nelson's calls "because any officer meeting 'no response' on the radio is a safety issue." (*Id.* ¶¶ 18–19.) Yet Bucki failed to alert the dispatcher after instances when Nelson's calls received no response. (*Id.* ¶ 20.) Upon her return to the police station, Nelson discussed the incident with Bucki. (*Id.* ¶ 21.) Nelson asked Bucki whether she had heard the dispatcher ignore Nelson's calls, and Bucki responded that she did not. (*Id.*) After Nelson continued to press the issue, Bucki cut Nelson off and told her "I don't have to talk to you!" (*Id.*) According to Nelson, Bucki's radio was audible, and therefore Bucki was dishonest in claiming that she did not hear Nelson's calls to the dispatcher. (*Id.* ¶¶ 25–26.) Moreover, after the incident, Bucki did not follow Chicago Police Department procedure by initiating the grievance procedure to resolve the radio issue. (*Id.* ¶ 27.) Instead, Bucki ignored Nelson's request to retrieve the radio transmissions from the incident and did not report the radio failure to her supervisor. (*Id.* ¶¶ 28–29.) Nelson asserts that Bucki took steps to impede the initiation of any investigation of the incident to cover up her numerous rule violations. (*Id.* ¶¶ 32–36.)

The following day, during roll call, Nelson asked a supervising officer for time to express her concerns about being ignored by the dispatcher. (*Id.* ¶ 37.) When the supervising officer claimed not to have heard Nelson's calls to the dispatcher, Nelson insisted that he obtain the

recorded radio transmissions to hear what happened. (*Id.*) Later that day, a probationary officer approached Nelson to tell her that he heard her calls. (*Id.* ¶ 38.) Nelson did not know the name of that probationary officer; she only knew that he was a black male who worked with another Hispanic male probationary officer. (*Id.*) Although both officers worked on December 8 and 9, 2016, when Nelson looked at the attendance sheets for those days to determine their names, she discovered that the officers were falsely labeled as on "vacation" for that week. (*Id.*)

Several months later, Nelson read through her narrative report of the December 8, 2016 incident and discovered that the lines in her report detailing her first two or three calls to the dispatcher and her emergency calls had been deleted. (*Id.* ¶ 39.) Further, those lines were replaced with lines that she did not write. (*Id.* ¶ 46.) Sergeant Boffo's name was listed as the officer who signed off on the altered report. (*Id.* ¶¶ 39, 48.) Nelson claims that Boffo intentionally altered her report because:

> [1]) Department policy was that before a report was changed, the supervisor would contact the officer who drafted the report; and Boffo never contacted [Nelson] before the report was changed; 2) By signing [Nelson's] report, Boffo approved the deletions; and 3) During a December 19, 2016 recorded interview, it was alleged by Boffo's co-workers that [Nelson's] report was "suspended" at 1:00 p.m. on December 8, 2018; this was a false statement because [Nelson] had not even submitted her report until 3:15 p.m. on this date, which was more than two hours after the Department alleged the report had been suspended; and this dishonest statement was intended to hide Boffo's misconduct of deleting the facts from Nelson's report, which illustrated the misconduct of the dispatchers and Bucki.

(*Id.* ¶ 40.) Nelson contends that by altering her report Boffo violated numerous Chicago Police Department rules. (*Id.* ¶¶ 46–47.)

Nelson subsequently filed the present § 1983 action against Bucki, Boffo, and the City. She alleges that Bucki violated her substantive and procedural due process rights under the Fourteenth Amendment by failing to intervene when the dispatcher did not respond to Nelson's emergency calls. In addition, Nelson claims that Boffo violated her substantive due process rights

4

when he deleted important parts of Nelson's police report. Finally, Nelson seeks to hold the City responsible for Bucki's and Boffo's actions under the doctrine of *respondeat superior*.

Defendants previously moved to dismiss Nelson's Second Amended Complaint ("SAC") under Federal Rule of Civil Procedure 12(b)(6)—a request this Court granted. (Dkt. No. 57.) Nelson was given leave to file an amended complaint and subsequently filed her TAC. Once again, Defendants have filed a motion to dismiss. (Dkt. No. 66.)

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

### I.     Local Rule 7.1

Before addressing the merits of Defendants' motion to dismiss, the Court must address Defendants' and Nelson's respective violations of Northern District of Illinois Local Rule 7.1. Local Rule 7.1 imposes a 15-page limit on all briefs. Any party seeking to exceed that limit must seek prior approval of the Court. Furthermore, briefs exceeding the page limit must have a table of contents and a table of cases. Here, neither Defendants nor Nelson sought leave to file a brief exceeding 15 pages. Yet Defendants' opening brief exceeds the page limit by 3 pages and

Nelson's opposition brief exceeds the page limit by *10 pages*. Moreover, both briefs lack a table of contents and a table of cases.

Nelson's local rule violation is particularly egregious, given that her opposition brief contains a 16-page facts section that appears to be a minimally edited copy-and-paste of the TAC. Of course, the Court does not need a facts section in a brief that reproduces a complaint verbatim; the Court will always carefully review the operative complaint when evaluating a motion to dismiss. To make matters worse, there are three block quotes occupying about 5 pages in Nelson's argument section that are exactly identical to three block quotes Nelson already included in her facts section. That means Nelson's 25-page brief has about 4 pages of original content. Undoubtedly, Nelson could have (and should have) met the 15-page limit by drafting a concise summary of the facts and eliminating unnecessary duplication.[2]

While Local Rule 7.1 allows the Court to strike any brief that does not comply with its requirements, the Court will not take that step here. Instead, counsel for both Defendants and Nelson are admonished to be mindful of the Local Rules for any future filings in this District.

## II. Substantive Due Process Claims

Nelson asserts substantive due process claims against both Bucki and Boffo, alleging that they each engaged in behavior that "shocks the conscience." The substantive due process component of the Fourteenth Amendment's Due Process Clause protects individuals from arbitrary action by the government. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). To constitute a violation, the government's conduct must "properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992). And "only the most egregious" government action will suffice to state a

---

[2] Nelson also violates Local Rule 5.2, which requires 12-point font to be used in the body of the text of her brief, as there are portions of her brief in which a smaller font is used.

constitutional claim. *Lewis*, 523 U.S. at 846. The Supreme Court has noted that while the standard lacks precise measurement, generally it includes conduct falling on the more culpable end of "tort law's spectrum of liability." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). Moreover, both the Seventh Circuit and the Supreme Court have "cautioned[] that the scope of substantive due process is very limited." *Belcher v. Norton*, 497 F.3d 742, 753 (7th Cir. 2007).

According to Nelson, Bucki's conduct in failing to alert the dispatcher to respond to Nelson's calls shocks the conscience because Bucki failed to protect Nelson from danger. Under the state-created-danger doctrine, a plaintiff's substantive due process rights are violated when: (1) the state affirmatively acts to "create or increase a danger faced by" the plaintiff; (2) the state's failure to protect the plaintiff from the danger proximately caused the plaintiff's injury; and (3) the state's failure shocks the conscience. *King*, 496 F.3d at 818. The Seventh Circuit has advised that the "create or increase" language "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 548 F.3d 595, 599 (7th Cir. 2008). Put differently, "[m]ere indifference or inaction in the face of private violence cannot support a substantive due process claim." *Wilson-Trattner v. Campbell*, 863 F.3d 589, 596 (7th Cir. 2017).

This Court previously dismissed Nelson's SAC because Bucki's alleged inaction provided the sole basis for Nelson's substantive due process claim—the dispatcher did not respond, and despite her duties as a supervisor, Bucki did not take any action to address the dispatcher's failure. *See Sandage*, 548 F.3d at 600 ("When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than it just stood by and did nothing to prevent private violence.") While Nelson's

TAC adds allegations about steps Bucki took to prevent an investigation of the incident, those allegations are irrelevant to whether Bucki acted to create or increase the danger Nelson faced at the crime scene. Whatever actions Bucki took to cover up her inaction occurred well after the dangerous situation Nelson encountered in responding to the in-progress robbery of the Federal Express truck had ended.

Furthermore, in dismissing the substantive due process claim against Bucki in the SAC, this Court found that the SAC failed plausibly to allege that Bucki's conduct was "conscience shocking," as it included no facts suggesting greater culpability than negligence on Bucki's part. And where a government official's acts are merely negligent, there can be no liability under the Due Process Clause. *King*, 496 F.3d at 819. Instead of remedying that deficiency, the TAC affirmatively admits that Bucki's "[i]nattention to [d]uty was . . . negligent." (TAC ¶ 22.) Thus, even if Bucki had taken some affirmative action to increase the danger faced by Nelson, the TAC fails to plead that such action shocked the conscience.

Similarly, Nelson fails to state a substantive due process claim against Boffo. Nelson's objection to Boffo's alleged alteration of Nelson's police report to include his own inaccurate description of the incident presents a workplace dispute that does not implicate the Constitution. *See, e.g.*, *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation."); *Brown v. Brienen*, 722 F.2d 360, 365 (7th Cir. 1983) ("[T]he Constitution must not be trivialized by being dragged into every personnel dispute in state and local government. Disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment."). Boffo's failure to abide by department policy does not, standing alone, equate to a constitutional violation.

8

Moreover, Nelson's allegation that Boffo's conduct "created a dangerous situation" is merely conclusory and thus not entitled to be accepted as true. Indeed, the Court does not see how Boffo's conduct could have created or increased the danger Nelson encountered when she responded to the robbery, given that his edits to Nelson's report were made long after the robbery giving rise to Nelson's claim. Finally, Nelson fails to allege adequately how Boffo's conduct was a proximate cause of her injury. According to the TAC, Nelson was injured because she suffered PTSD as a result of the events of December 8, 2016. (TAC ¶ 26.) Again, Boffo's conduct occurred some time after those events, and Nelson does not allege that it contributed to her mental health diagnosis.

### III. Procedural Due Process Claim

Nelson also asserts a procedural due process claim against Bucki. Specifically, Nelson argues that because of Bucki's conduct, Nelson has been deprived of a property interest in her employment, as she can no longer work due to her PTSD. To state a procedural due process claim, "a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation." *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).

Here, Nelson alleges that she had a protected interest in her employment. In seeking dismissal of the claim, Bucki argues that Nelson cannot show that she has been deprived of a property interest because she has suffered no economic loss. Although the TAC alleges that Nelson has not been able to return to work, it does not state that her employment as a Chicago police officer was terminated or that she is no longer receiving her salary. Bucki is correct that for a plaintiff to recover for a deprivation of a property interest, she must "show some economic loss from the state's action, or at least an identifiable impact on [her] future income or economic

9

benefits." *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007). Nelson has no response to Bucki's argument on this point in her opposition, and she has therefore waived or forfeited any argument against dismissing the procedural due process claim on this ground. *See Jones v. Conors*, No. 11 C 8276, 2012 WL 4361500, at *7 (N.D. Ill. Sept. 20, 2012) ("A party's failure to respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."). *Compare Alioto v. Town of Lisbon,* 651 F.3d 715, 719 n.1, 721 (7th Cir. 2011) (forfeiture occurs where the "litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"), *with Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument [in a motion to dismiss] results in waiver.").

But even if Nelson had alleged the deprivation of a property interest, the TAC contains no allegations whatsoever suggesting that the procedural protections surrounding that deprivation were insufficient. Yet, to meet the second element of a procedural due process claim, Nelson must allege either "that state procedures as written do not supply basic due process or that state officials acted in a 'random and unauthorized' fashion in depriving the plaintiff of [her] protected interest." *Strasburger v. Bd. of Educ., Hardin Cty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 358 (7th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 540 (1981)). She alleges neither, and that is an additional reason her procedural due process claim against Bucki fails.

### IV.    *Respondeat Superior*

In dismissing the SAC's claim seeking to hold the City liable under the doctrine of *respondeat superior*, the Court explained the well-established rule that there is no *respondeat superior* liability for municipalities under § 1983, *see Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019), and instead considered whether Nelson had stated a claim under *Monell*

*v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978). Nonetheless, the TAC again seeks to hold the City liable under the doctrine of *respondeat superior*. And again, any such claim necessarily fails. Moreover, despite the Court's prior ruling, nowhere in either the TAC or Nelson's opposition brief is *Monell* even mentioned. In any case, the TAC fails to state a *Monell* claim because Nelson has failed to plead any underlying constitutional violations by Bucki or Boffo. *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010) ("[A] municipality cannot be liable under *Monell* when there is no underlying constitutional violation by a municipal employee."). Thus, Nelson's claim against the City is dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 66) is granted. Nelson's claims are dismissed with prejudice, as she has had three opportunities to amend her complaint and still has failed to state a viable claim.

ENTERED:

Dated:  January 28, 2020

_____
Andrea R. Wood
United States District Judge